IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ALAN LEVINE,

        Plaintiff,

    v.

BANK OF AMERICA, N.A., and THE
WACKENHUT CORPORATION,

        Defendants.

CIVIL ACTION FILE

NO. 1:07-CV-2243-BBM

## O R D E R

This matter is before the court on the Motion for Summary Judgment filed by Defendant Bank of America, N.A. ("BOA") [Doc. No. 84] and the Motion for Summary Judgment filed by Defendant The Wackenhut Corporation ("Wackenhut") [Doc. No. 91]. Also pending are BOA's Motion to Strike [Doc. No. 95], which is hereby GRANTED; Plaintiff Alan Levine's Motion for Extension of Time to File Response to Motion for Summary Judgment [Doc. No. 96], which is hereby DENIED AS MOOT; and Plaintiff Alan Levine's Motion to Seal Plaintiff's Brief in Opposition [Doc. No. 103], which is hereby GRANTED.

## I.    Factual and Procedural Background

On the morning of September 6, 2005, Plaintiff Alan Levine ("Mr. Levine") was attacked on the front steps of a BOA branch at 1088 Peachtree Street, N.E., Atlanta, Georgia (the "1088 Peachtree branch"). The 1088 Peachtree branch had two

entrances, a front entrance that faced Peachtree Street, and a back entrance that faced a parking lot.  Mr. Levine had gone to the bank to make a deposit of approximately $20,000 in cash and checks.  He climbed to the top of the steps at the front entrance when an assailant, Salvatore Maiolo, robbed and beat him.  He had not yet entered the facility.  Mr. Levine suffered serious injuries that continue to limit him and cause him pain to this day.

Security at that BOA branch was provided by Wackenhut.  The purpose of the Wackenhut officers was to deter robberies through the visible presence of armed security guards.  The Wackenhut guard on duty that day was Nathaniel Watts ("Mr. Watts").  At a bank with two entrances, Wackenhut procedure was to have an officer patrol both entrances, but to concentrate on the most heavily used entrance.  At the 1088 Peachtree branch, BOA and Wackenhut believed that the most heavily used entrance was the back door adjacent to the parking lot.[1]  Mr. Watts accordingly estimated that he spent 95 percent of his time there and made only random patrols at his discretion to the front of the bank.  He thought that he made two to three rounds to the front of the bank during a typical day, depending on how busy the

---

[1] Crystal Nichols, a manager at the 1088 Peachtree branch, believed equal numbers of customers entered from the front and the back doors.  Jimmy Holcombe, the vice president of BOA's security division, thought that the back entrance was more heavily used.

back entrance was.  After the assault on Mr. Levine, Mr. Watts was told to increase his patrols to the front of the bank.

There were three robberies at the 1088 Peachtree branch in the three to five years before Mr. Levine was attacked.  All three involved robbers passing notes demanding money to the teller while inside the bank.  In all three, the criminal entered the bank through the front entrance facing Peachtree Street.  In two, the criminals also exited through the front door.  One of the robbers stated that he was armed and warned the teller not to hit the alarm.  There were also some thefts from the parking lot after bank hours, and a car was stolen from an adjacent public street.

Mr. Levine sued BOA and Wackenhut for negligent failure to provide adequate security.  Both defendants have moved for summary judgment.

## II.   <u>Standard of Review</u>

Summary judgment is proper if "there is no genuine issue as to any material fact" and "the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).  However, the non-movant must do more than "simply show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586

(1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient . . . ." Anderson, 477 U.S. at 252. The non-movant may not avoid summary judgment with evidence that is "merely colorable or is not significantly probative." Raney v. Vinson Guard Serv., Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). Indeed, the non-movant must go beyond the pleadings and set forth specific facts to show that a genuine issue for trial does exist. Anderson, 477 U.S. at 257.

III.   **Analysis**

    A.    **BOA's Motion for Summary Judgment**

To support a negligence claim, the plaintiff must show that the defendant (1) had a "legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm," (2) breached that duty, and that there was (3) a legally attributable causal connection between the conduct and the resulting injury, and (4) damage to the plaintiff. Snellgrove v. Hyatt Corp., 277 Ga. App. 119, 122, 625 S.E.2d 517, 520 (2006). Under Georgia law, the owner of land has a legal duty to exercise ordinary care in keeping his premises safe for those invited onto the land. O.C.G.A. § 51-3-1; Matt v. Days Inns of Am., Inc., 212 Ga. App. 792, 793, 443 S.E.2d 290, 292 (1994). However, "[a]n intervening criminal act by a third party generally insulates a landowner from liability unless such criminal

act was reasonably foreseeable." <u>Agnes Scott College, Inc. v. Clark</u>, 273 Ga. App. 619, 621, 616 S.E.2d 468, 470 (2005).

A crime is foreseeable if it is "substantially similar to previous criminal activities occurring on or near the premises such that a reasonable person would take ordinary precautions to protect invitees from the risk posed by the criminal activity." <u>Id.</u>  The court "must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question." <u>Id.</u> at 621-22, 616 S.E.2d at 470-71 (citation and internal quotations omitted).  Though the prior criminal activity does not have to be identical, <u>id.,</u> "the incident causing the injury must be substantially similar in type to the previous criminal activities occurring on or near the premises so that a reasonable person would take ordinary precautions to protect his or her customers or tenants against the risk posed by that type of activity." <u>Wade v. Findlay Mgmt., Inc.,</u> 253 Ga. App. 688, 689, 560 S.E.2d 283, 285 (2002) (citation and internal quotations omitted).

Georgia courts require a high degree of similarity to find foreseeability.  For example, in <u>Agnes Scott</u>, the daytime abduction of a college student in a full parking lot was not foreseeable as a matter of law when the only similar criminal incidents were break-ins of unoccupied cars and other incidents that did not involve person-

to-person violence.  Agnes Scott, 273 Ga. App. at 622-23, 616 S.E.2d at 471; see also

Baker v. Simon Prop. Group, 273 Ga. App. 406, 407-08, 614 S.E.2d 793, 795-96 (2005).

Prior occurrences of property crimes do not make violent assaults on a person

foreseeable.  Similarly, the dangers associated with a parking lot at night do not

create an issue of fact regarding the foreseeability of an attack in broad daylight.

Agnes Scott, 273 Ga. App. at 622-23, 616 S.E.2d at 471.  Georgia courts have also

found that prior instances of criminal activity inside a bank did not make a robbery

in the bank parking lot foreseeable.  McClendon v. Citizens & S. Nat'l Bank, 155 Ga.

App. 755, 756, 272 S.E.2d 592, 593 (1980); see also Norby v. Heritage Bank, 284 Ga.

App. 360, 362, 644 S.E.2d 185, 188 (2007).  Thus, the nature and location of past

crimes must be quite similar to the incident in question for it to be foreseeable.

By contrast, a woman robbed and shot in a Wal-Mart parking lot created a

jury question on the issue of foreseeability by presenting evidence of the following

criminal incidents during the two-year period preceding the attack on her:

> fourteen thefts of unoccupied automobiles from the Wal-Mart parking
> lot; theft of a 48' trailer that contained Wal-Mart merchandise from the
> parking lot; theft by forcibly grabbing a purse from a woman in the
> parking lot; eight incidents of theft of property taken from unoccupied
> vehicles; theft of a purse from an unattended shopping cart; an
> aggravated assault by gun in the parking lot; firing of a gun in the air,
> while making threatening comments to a person in front of the
> Wal-Mart store; two incidents of theft by taking wallets from women
> who were shopping; and showing of a gun and making threatening

comments to a person in a fast food restaurant inside the Wal-Mart store.

Wal-Mart Stores, Inc. v. Lee, 290 Ga. App. 541, 548, 659 S.E.2d 905, 911 (2008).  The fact that a number of other robberies and physical assaults with deadly weapons had occurred both in the parking lot and inside the store were enough to have attracted Wal-Mart's attention to the existence of a dangerous condition in its parking lot.

In this case, Mr. Levine was attacked on the front steps of the 1088 Peachtree branch.  The only other crimes committed anywhere at that location were three robberies of bank tellers that occurred inside the facility.  There are important differences between the prior bank robberies and the crime against Mr. Levine that render the latter unforeseeable as a matter of law.  In each demand note robbery, the crime took place inside the bank at a teller station.  Mr. Levine was robbed and beaten as he approached the bank but while still at the top of the steps.  The location of his attack was different, outside on the front steps as he approached the bank, than where the previous robberies had taken place.[2]  See McClendon, 155 Ga. App.

_____

[2] That the three robbers who had previously held up BOA tellers entered through the front door at the 1088 Peachtree branch does not create a triable issue of fact.  Perhaps Mr. Watts should have patrolled the front entrance more thoroughly as a means of deterring robbers from using that entrance to the bank, but again, none of those robbers physically assaulted a customer on the front steps.  They simply passed through that entrance on their way to the teller stations inside the bank.  The use of the front entrance by criminals on their way to commit a crime that differs in nature, location, and extent from the crime committed against Mr. Levine does not make the attack on him foreseeable.

-7-

at 756, 272 S.E.2d at 593.

In the demand note robberies, the criminal entered the bank, handed a note to the teller demanding money, and left without harming anyone. Mr. Levine was physically confronted, had his money jerked out of his arms, and then was badly beaten. Though one of the robbers stated that he had a gun when handing the note to the teller, the three robberies by demand note were not physically confrontational in the sense of actual violent contact between the criminal and the victim. Cf. Piggly Wiggly S., Inc. v. Snowden, 219 Ga. App. 148, 149, 464 S.E.2d 220, 223 (1995) (finding that 17 purse snatchings prior to the sexual assault in question were sufficiently similar to put defendant on notice of the threat of confrontational attacks on persons). The victims were also different. Mr. Levine was a customer coming to make a deposit. The previous robberies were of bank employees, who generally have greater sums of money at their disposal.[3] Thus, the location, nature, and extent

---

[3] Mr. Levine also points out "a couple of thefts in the parking lot after hours," a stolen car from a public side street, and an Atlanta Police Department call-for-service list that included a commercial robbery and a robbery of a pedestrian. (Pl.'s Br. in Opp'n to Def. BOA's Mot. for Summ. J. 9.) The former two categories of incidents are clearly property crimes and do not put BOA on notice that the physical assault and robbery of Mr. Levine might occur on its premises. See Doe v. Prudential-Bache/A.G. Spanos Realty Partners, L.P., 268 Ga. 604, 606, 492 S.E.2d 865, 867 (1997) ("[T]he very nature of the thefts and acts of vandalism committed in this case do not suggest that personal injury may occur.") (citation and internal quotations omitted). As to the Atlanta Police Department report, Mr. Levine does not argue that BOA was aware of the incidents reported to the Atlanta Police, and a property owner has no duty "to investigate police files to determine whether criminal activities have occurred on its premises." Sun Trust Banks, Inc. v. Killebrew, 266 Ga. 109, 109, 464 S.E.2d 207, 208 (1995); see also Baker, 273 Ga. App. at 407,

of the prior crimes was significantly different than the attack on Mr. Levine.

Mr. Levine cites <u>Norby</u>, which found a prior late-night attempt to break into an ATM machine

> marginally sufficient to attract the bank's attention to the dangerous condition created by the dim lighting and secluded location of its ATM and thereby put the bank on notice of the possibility of a criminal attack upon, and therefore the murder of, a bank customer at such time and place.

<u>Norby</u>, 284 Ga. App. at 366, 644 S.E.2d at 190.  <u>Norby</u> shows that a prior crime involving the same location, same time of day, and same target (an ATM) can be sufficient for foreseeability, even though the previous assault was on property and not a person.  By contrast here, there are no prior crimes in evidence involving the same area of the bank property or target.[4]  There are no similarities between the demand note robberies of the bank and the beating and robbery of Mr. Levine, except that both are crimes and both occurred somewhere on the property of the 1088 Peachtree branch.  Such a lack of specific similarities is insufficient to create foreseeability under Georgia law.

Mr. Levine further argues that the inherent danger of a bank should have put

---

614 S.E.2d at 795.

[4] The record does not reflect at what time of day the demand note robberies of the 1088 Peachtree branch occurred.

BOA on notice of the possibility of violent crime against approaching customers. ATMs are inherently dangerous in the same way in which banks are inherently dangerous, but the <u>Norby</u> court noted that the dim lighting and secluded location exacerbated the underlying danger, and put the bank on notice that an attack against a person might occur at the same time of night in the same distant location. In this case, there are no circumstances to suggest to BOA any added danger at the 1088 Peachtree branch aside from its status as a bank.

Much of Mr. Levine's argument is devoted to the theory that BOA and Wackenhut could have executed security procedures in a more effective manner. Mr. Levine focuses on the fact that the standing orders for Wackenhut security officers instructed them to patrol between both entrances, if the facility had two entrances, and to concentrate on the most heavily used one. Mr. Watts estimated that he spent 95 percent of his time at the back entrance to the 1088 Peachtree branch, and only five percent at the front entrance where Mr. Levine was attacked. Jimmy Holcombe, the Vice President of BOA's security division and Mr. Watts's supervisor at the bank, stated that Mr. Watts should be patrolling the front between seven to ten times per day, or for about 20 percent of the day. He did not know that Mr. Watts spent less time at the front entrance. However, Mr. Watts's alleged deficiencies as a security guard are relevant only to whether there was a breach of

a duty owed to Mr. Levine as a bank customer.[5]  As discussed above, BOA owed no

duty to protect Mr. Levine from this attack because it was not foreseeable.

Mr. Levine argues that BOA and Wackenhut had superior knowledge of the

risks to customers approaching the front of the bank because they knew that the

security officer spent the vast majority of his time monitoring the back entrance.

However, the existence of a foreseeable risk must precede the question of superior

knowledge of that risk.  The duty owed depends on both foreseeability and superior

knowledge.  See Norby, 284 Ga. App. at 364, 644 S.E.2d at 189.  In the absence of a

foreseeable crime, BOA's alleged superior knowledge about the patrol route of its

security officer does not alone give rise to a duty to Mr. Levine.  See Dolphin Realty

v. Headley, 271 Ga. App. 479, 482, 610 S.E.2d 99, 103 (2005) (granting summary

judgment to defendant landowner for the first of two similar incidents because

plaintiff "failed to come forward and demonstrate knowledge of prior similar crimes

that would have put Dolphin Realty on notice and imposed a duty," and for the

second because plaintiff had the same knowledge of the risk as defendant); see also

Norby, 284 Ga. App. at 364, 644 S.E.2d at 189 ("[E]ven if the criminal act is

foreseeable, it does not necessarily follow that the landowner has superior

---

[5] This same is true for Mr. Levine's assertions that BOA did not conduct a needs assessment to identify threats, risks, and vulnerabilities.  No such assessment is required of BOA to protect against unforeseeable incidents.

knowledge, since the danger may be equally apparent to the plaintiff.") (emphasis added, citation and internal quotations omitted).  In other words, though a landowner has a duty to exercise ordinary care to protect an invitee from unreasonable risks of which he has superior knowledge, such a "duty extend[s] only to those criminal acts that [are] foreseeable." McDaniel v. Lawless, 257 Ga. App. 187, 188-89, 570 S.E.2d 631, 633 (2002); see also Millan v. Residence Inn By Marriott, Inc., 226 Ga. App. 826, 828, 487 S.E.2d 431, 433 (1997).

Finally, Mr. Levine points to his expert, John Villines ("Mr. Villines"), who believes that the crime against Mr. Levine was in fact foreseeable.  He bases this opinion on the nature of the bank's business and the presence of people coming and going with sums of money; on the fact that the front entrance was the point of entry chosen by the three prior bank robbers; and on the fact that the security officer, Mr. Watts, was not providing a diligent random patrol of the front of the building. These three facts are not in dispute by the parties and, as discussed above, they are insufficient to establish the foreseeability of the assault of Mr. Levine.  Mr. Villines's expert opinion that the crime was foreseeable does not alter the court's required legal analysis, or its conclusion that it was not.

In sum, the physical attack and robbery of Mr. Levine on the front steps of the 1088 Peachtree branch was not foreseeable.  The only prior crimes at that branch

were demand note robberies of tellers located inside the bank and property crimes against cars in the parking lot.  Such crimes do not put BOA on notice of the threat of an attack on a customer as he approaches the bank carrying his personal deposits. Though normally foreseeability is a question for the jury, here there is no evidence to create a factual issue as to whether the incident was reasonably foreseeable.  See Baker, 273 Ga. App. at 408, 614 S.E.2d at 795-96.  The crime against Mr. Levine was not foreseeable as a matter of law, and BOA has no duty to protect its customers from an intervening criminal act that was unforeseeable.   Therefore, summary judgment is appropriate.

### B.   Wackenhut's Motion for Summary Judgment

Any duty that Wackenhut owed Mr. Levine arose out of the contract Wackenhut had with BOA and not by operation of law.   Anderson v. Atlanta Comm. for Olympic Games, Inc., 273 Ga. 113, 117, 537 S.E.2d 345, 349 (2000).

> In personal injury cases, an injured party may not recover as a third-party beneficiary for failure to perform a duty imposed by a contract unless it is apparent from the language of the agreement that the contracting parties intended to confer a direct benefit upon the plaintiff to protect him from physical injury.

Id. (citation and internal quotations omitted).  In other words,

> whenever a premises owner contracts with a private security company the parties may *expect* the security services provided to benefit invitees who visit the property. . . .  [H]owever, an injured invitee may not recover against the security company for negligent performance if the

-13-

contract is silent as to the parties' *intent* to confer that benefit.

Brown v. All-Tech Inv. Group, Inc., 265 Ga. App. 889, 897, 595 S.E.2d 517, 524 (2003).

Intent to create a third party beneficiary must be apparent on the face of the contract.

Scott v. Mamari Corp., 242 Ga. App. 455, 457, 530 S.E.2d 208, 211 (2000). "A contract

is intended to benefit a third party when the promisor engages to the promisee to

render some performance to a third person." Id.

Mr. Levine may not recover against Wackenhut because the contract between

Wackenhut and BOA does not evince an intent to protect a customer such as Mr.

Levine. The contract between BOA and Wackenhut contains the following clause:

> This Agreement shall be binding upon, and inure to the benefit of, the
> Parties and their respective successors and assigns. Except as expressly
> set forth in this Agreement and with the exception of the Affiliates of
> Bank of America, the Parties do not intend the benefits of this
> Agreement to inure to any third party, and nothing contained herein
> shall be construed as creating any right, claim or cause of action in
> favor of any such other third party, against either of the Parties thereto.

(Master Services Agreement § 26.12.) The explicit contractual language disavows

any third party beneficiary to the agreement. This clearly reflects the intent *not* to

provide any benefit to a third party. Monroe v. Bd. of Regents of Univ. Sys. of Ga.,

268 Ga. App. 659, 666, 602 S.E.2d 219, 225 (2004); see also Walls, Inc. v. Atl. Realty

Co., 186 Ga. App. 389, 392, 367 S.E.2d 278, 281 (1988). Mr. Levine, as an injured

invitee, may not recover against Wackenhut for its allegedly negligent performance

of the contract.

Mr. Levine cites a concurring opinion in <u>FPI Atlanta L.P. v. Seaton</u>, 240 Ga. App. 880, 524 S.E.2d 524 (1999), for the proposition that a security services company may be liable notwithstanding the intent of a contract if it voluntarily undertook to provide security. The basis for such liability is the Restatement of Torts Second § 324A. There is "no precedent, however, for applying this section to a defendant's failure to prevent a violent attack." <u>Brown</u>, 265 Ga. App. at 898, 595 S.E.2d at 524-25. Furthermore, Mr. Levine would still have to show that the intervening criminal act was reasonably foreseeable in order to impose liability for negligence. This, as discussed above, he cannot do. Accordingly, summary judgment in favor of Wackenhut will be granted.

**IV.    <u>Summary</u>**

For the foregoing reasons, BOA's Motion for Summary Judgment [Doc. No. 84] and Wackenhut's Motion for Summary Judgment [Doc. No. 91] are both GRANTED. BOA's Motion to Strike [Doc. No. 95] is GRANTED. The Notice of Unopposed Motion for Summary Judgment filed by BOA [Doc. No. 94] is hereby stricken from the record. Mr. Levine's Motion for Extension of Time to File Response to Motion for Summary Judgment [Doc. No. 96] is DENIED AS MOOT. Mr. Levine's Motion to Seal Plaintiff's Brief in Opposition [Doc. No. 103] is

GRANTED.  The Clerk is DIRECTED to place the Brief in Opposition to Defendant

Bank of America's Motion for Summary Judgment [Doc. No. 98] under seal.  This

case is DISMISSED.

IT IS SO ORDERED, this 31st day of July, 2008.


s/Beverly B. Martin
BEVERLY B. MARTIN
UNITED STATES DISTRICT JUDGE